```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF ALABAMA
                           SOUTHERN DIVISION
```

SHELIA A. LOGAN,                    *
                                    *
    Plaintiff,                      *
                                    *
vs.                                 *    CIVIL ACTION NO. 17-00509-B
                                    *
NANCY BERRYHILL,                    *
Acting Commissioner of Social       *
Security,                           *
                                    *
    Defendant.                      *

## ORDER

Plaintiff Shelia A. Logan (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.*  On October 12, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case.  (Doc. 21).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.  **Procedural History**[1]

Plaintiff filed her application for benefits on November 17, 2014, alleging disability beginning August 3, 2014, based on heart failure, hypertension, coronary artery disease (CAD), hypothyroidism, and glaucoma. (Doc. 8 at 147-49, 164, 168). Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Thomas M. Muth II (hereinafter "ALJ") on August 8, 2016. (Id. at 37). Plaintiff attended the hearing with her attorney and provided testimony related to her claims. (Id. at 41). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 50). On January 13, 2017, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 19). The Appeals Council denied Plaintiff's request for review on October 25, 2017. (Id. at 5). Therefore, the ALJ's decision dated January 13, 2017, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on November 27, 2018. (Doc. 25). This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

**II.  Issues on Appeal**

    1. **Whether substantial evidence supports the Residual Functional Capacity ("RFC") for a range of light work with the stated restrictions?**

    2. **Whether the ALJ erred in failing to resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT")?**

**III. Factual Background**

Plaintiff was born on January 28, 1963, and was fifty-three years of age at the time of her administrative hearing on August 8, 2016.  (Doc. 8 at 37, 164).  Plaintiff did not graduate from high school, but she obtained her GED.  (Id. at 41).

Plaintiff last worked from 2008 to 2011 for Hinkle Metal and Supply Company as a customer service/parts representative.[2]  (Id. at 42).  Prior to that, from 2001 to 2004, she performed the same type of work for Associated Equipment Company of Delaware.  (Id.).

Plaintiff testified that she can no longer work because she gets fatigued, short-winded, dizzy, and has pain in her legs when she stands or walks for more than fifteen minutes.  (Id. at 43-45).  Her treating physician recommended exercise and changing the dosage of her blood pressure medication.  (Id. at 45). Plaintiff further

---

[2] Plaintiff testified that the job involved taking orders from installers for equipment, parts, and supplies, pulling the parts and supplies from the warehouse, preparing invoices, billing customers, shipping and receiving, stocking shelves, and warehouse work.  (Doc. 8 at 42).

3

testified that her blood pressure varies throughout the day, and when it is low, it makes her feel tired and unable to concentrate. (Id. at 45-46). Plaintiff also testified that this occurs most days and usually lasts for about an hour. (Id. at 46-47). According to Plaintiff, her doctor recommended testing for peripheral artery disease in her legs because of her leg pain, but she has been unable to have the testing because she has no insurance. (Id. at 47).

### IV. Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**V.    Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or

equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  At the fourth step, the ALJ must make an assessment of the claimant's RFC.  See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (llth Cir. 2004).  The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment.  See Lewis v. Callahan, 125 F.3d 1436, 1440 (llth Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

6

**VI.  Discussion**

        A. **Substantial evidence supports the Residual Functional Capacity ("RFC") for a range of light work with the stated restrictions.**

In her brief, Plaintiff argues that the ALJ's finding that she can perform a range of light work is not supported by substantial evidence, given her uncontrolled hypertension and heart disease. (Doc. 9 at 3). According to Plaintiff, "[b]ased on the available evidence from [her] cardiologist, she is not capable of performing the standing and walking required of light work." (Id. at 3, 5). The Government counters that the ALJ expressly considered Plaintiff's impairments, including her hypertension and heart disease, and that the RFC is fully supported by the substantial evidence. (Doc. 17 at 5). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ

has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet his burden in this case.

In the instant case, the ALJ found that Plaintiff has the severe impairments of depressive disorder, left ventricle dysfunction, cardiac artery disease status post myocardial infarction, and congestive heart failure. (Doc. 8 at 21). The ALJ also determined that Plaintiff has the RFC to perform a range of light work with the following restrictions: Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for six hours total, no more than 30 minutes at a time. She can sit for six hours total, no more than 60 minutes at a time. She can perform occasional pushing and/or pulling with the upper extremities, bilaterally, and frequent pushing and/or pulling with the lower extremities, bilaterally. She is capable of frequent balancing, frequent stooping, occasional kneeling, occasional crouching, occasional crawling, and occasional climbing of ramps and stairs. She can perform no climbing of ladders, ropes or scaffolds. She is also capable of frequent reaching, bilaterally; frequent handling, bilaterally; continuous fingering, bilaterally; and continuous feeling, bilaterally. She can tolerate occasional exposure to extreme heat and must avoid all exposure to

extreme cold. She can tolerate occasional exposure to pulmonary irritants.  She must avoid all exposure to unprotected heights and avoid all exposure to dangerous machinery.  She is capable of performing simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with infrequent and well-explained workplace changes. She can tolerate occasional and non-transactional interaction with the public, non-transactional interactions with co-workers and non-transactional interaction with supervisors.  She can sustain attention for two-hour periods customary breaks.  (Doc. 8 at 24).

Based upon the testimony of the vocational expert, the ALJ concluded that Plaintiff is not able to perform her past relevant work, but she can perform other work such as production assembler, collator operator, and garment sorter.  (Id. at 29-30).  Thus, the ALJ found that Plaintiff is not disabled.  Having reviewed the evidence at length, the Court is satisfied that the ALJ's RFC is supported by substantial evidence.

As the ALJ found, Plaintiff's treatment records show that she was treated from August 2014 to June 2016 for various ailments including congestive heart failure (in August 2014), coronary artery disease, and high blood pressure.  (Id. at 267-380). Following a heart catheterization and stent placement in August 2014, Plaintiff's treatment records reflect largely conservative treatment for her conditions with medication, which resulted in

9

adequate control of symptoms. Her doctor also instructed her to stop smoking, perform regular exercise, and diet. (Id.). Indeed, Plaintiff's medical records (including her most recent records) contain largely normal physical examination findings with notations that she was "really doing well," "echocardiogram was normal," "normal" cardiovascular exam with "regular rate and rhythm," "no murmurs, rubs [or] gallops," "normal" lungs with "non-labored" breathing, "hypertension borderline controlled," no swelling in extremities, "CMP (comprehensive metabolic panel) was essentially normal," "thyroid was normal," "no acute distress," "blood pressure looks good," "lungs were clear," "cardiac was negative," "denies chest pain and shortness of breath with routine household chores," "gait is normal," "encouraged her to perform aerobic exercise for a least 30 minutes as day, as tolerated," "discussed the continued risks of smoking tobacco given her prior myocardial infarction," "counseled her on smoking cessation and increasing her daily exercise to overcome any leg pain," "continued lack of motivation to quit [smoking] despite repeated advice," and "still smoking about a ½ pack per day and she understands the significance of that." (Id. at 341-43, 364-65, 370, 377-80).

In her brief, Plaintiff argues that her cardiologists assigned her a New York Heart Association ("NYHA") heart disease classification of class II, stage C, which, she argues, was not

10

accommodated by the RFC.[4] (Doc. 9 at 3-4; Doc. 8 at 364). To the contrary, however, the ALJ expressly and repeatedly considered the NYHA designation when making accommodations in the RFC, stating, in part: "Although the claimant continued to complain of cardiac symptoms, including shortness of breath and fatigue, throughout the record, the objective evidence remained relatively mild after her August 2014 heart attack. Therefore, the assessed residual functional capacity should be sufficient to account for any fatigue or shortness of breath secondary to her CCS Class II angina, which indicates only a slight limitation of ordinary activities, as well as her NYHA class [II], stage C heart disease, which indicates the presence of structural heart disease, but only mild symptoms with a slight limitation of physical activities." (Doc. 8 at 26-29).

---

[4] In 1928, the New York Heart Association published a classification of patients with cardiac disease based on clinical severity and prognosis, which has been updated in seven subsequent editions of Nomenclature and Criteria for Diagnosis of Diseases of the Heart and Great Vessels (Little, Brown & Co). See https://professional.heart.org/professional/General/UCM_423811_Classification-of-Functional-Capacity-and-Objective-Assessment.jsp. Patients, such as Plaintiff, with a Class II designation are described as having "[s]light limitation of physical activity. Comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea (shortness of breath)." In addition, patients, such as Plaintiff, with a Stage C Objective Assessment designation, are described as having: "[o]bjective evidence of moderately severe cardiovascular disease. Marked limitation in activity due to symptoms, even during less-than-ordinary activity. Comfortable only at rest." See https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure. The American Heart Association has noted that "[c]riteria for use of the terms minimal, moderately severe, and severe disease cannot be defined precisely. Grading is based on the individual physician's judgment." Id.

11

Plaintiff's cardiologists, Dr. Omar and Dr. Malozzi, graded her heart disease as NYHA class II, stage C, which can include patients with objective evidence of moderately severe cardiovascular disease and even marked limitation in activity due to symptoms. However, nowhere in their treatment notes did they indicate that Plaintiff had functional limitations with regard to standing, walking, or any other activity in excess of the RFC. (Id. at 363-66). To the contrary, both recommended that Plaintiff "perform aerobic exercise for at least 30 minutes a day, as tolerated, for cardiovascular fitness for at least 5 days a week." (Id. at 358, 365, 371-79). In addition, Plaintiff's physical examination findings repeatedly note no swelling in her extremities, non-labored breathing, and normal heart rate and rhythm. (Id. at 342, 364-65, 370-80). Moreover, the evidence of Plaintiff's activities of daily living reflects that she can take care of her own personal needs, cook, clean, do laundry, drive, shop, garden, and manage her own finances. (Id. at 43, 187-95, 352).

While there is no question that Plaintiff has been diagnosed with congestive heart failure, coronary artery disease, and hypertension and that she had a heart attack in 2014 and continues to experience symptoms such as fatigue and shortness of breath, Plaintiff's treatment records, on the whole, reflect successful treatment of her 2014 congestive heart failure and routine,

12

conservative treatment of her hypertension and heart disease, resulting in largely normal examination findings.

Based on the foregoing, the Court finds that the substantial evidence supports the ALJ's determination that Plaintiff has the RFC to perform a range of light work, with the stated restrictions. Indeed, Plaintiff has failed to show that any limitations caused by her impairments (specifically including her heart disease and hypertension on which she relies) exceed the RFC and are not accommodated by the RFC and its stated restrictions. Accordingly, Plaintiff's claim must fail.[5]

### B. The ALJ did not err in failing to resolve an apparent conflict between the testimony of the vocational expert and the Dictionary of Occupational Titles ("DOT").

Next, Plaintiff argues that the ALJ erred in relying on the testimony of the vocational expert ("VE") that she could perform

---

[5] Although Plaintiff has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").

13

other work, namely, production assembler, collator operator, and garment sorter, all light and unskilled jobs. (Doc. 8 at 29-30, 51-52; Doc. 9 at 2). Plaintiff correctly points out that the RFC requires that she be given a sit/stand option (id. at 24), and she argues that the DOT's definition of "standing" as "being on one's feet in an upright position without moving about" and "light work" as requiring standing for up to six hours a day in "an upright position without moving about" would not allow for a sit/stand option. (Doc. 9 at 2). The Commissioner counters that it is well established that light work can be performed with a sit/stand option. (Doc. 17 at 3-4). The Court has reviewed the record at length and finds Plaintiff's claim to be without merit.

In a recent decision, Washington v. Commissioner of Soc. Sec., 906 F.3d 1353, 1356 (11th Cir. 2018), the Eleventh Circuit held that "the ALJs within the SSA have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them." The court explained that:

> This duty requires more of the ALJ than simply asking the VE whether his testimony is consistent with the DOT. Once the conflict has been identified, the Ruling requires the ALJ to offer a reasonable explanation for the discrepancy, and detail in his decision how he has resolved the conflict. The failure to discharge this duty means that the ALJ's decision, when based on the contradicted VE testimony, is not supported by substantial evidence.

14

Washington, 906 F.3d at 1356. An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE." Id. at 1365.

> It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony. At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case.

Id. Indeed, whether during or after a hearing,[6] "the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." Id. at 1363; accord Bennett v. Commissioner of Soc. Sec., 2019 U.S. Dist. LEXIS 16080, *20, 2019 WL 410271, *8 (M.D. Fla. Feb. 1, 2019) (citing Washington, 906 F.3d at 1365).

In the instant case, a VE was called to testify at Plaintiff's hearing as to jobs that Plaintiff could perform with her specified limitations. (Doc. 8 at 50-52). The ALJ posed a hypothetical to the vocational expert, expressly including the limitation of a sit/stand option. Based upon the hypothetical, the vocational

---

[6] The court explained that the ALJ may resolve an apparent conflict in one of two ways: "the ALJ must ask the VE whether there is a conflict and must ask for an explanation if there appears to be a conflict," or when an ALJ identifies an apparent conflict that was not raised during a hearing, the ALJ "can request an explanation of the conflict by submitting interrogatories to the vocational expert." Washington, 906 F.3d at 1363.

15

expert testified that an individual with claimant's age, education, and prior work experience, and with the limitations posed by the ALJ, including a sit/stand option, could perform the jobs of production assembler, collator operator, and garment sorter, all light and unskilled. (Id. at 50-51).

The precise hypothetical posed to the VE by the ALJ was as follows:

> I'd like for you to assume the existence of a hypothetical person the same age, education, and work history as the claimant. I'd like you [to] further assume this person has the following ability to perform work-related activity – to lift and/or carry 20 pounds occasionally, 10 pounds frequently, *stand and/or walk 6 hours no more than 30 minutes at a time,* sit 6 hours and no more than 60 minutes at a time. . . . Occasional pushing and/or pulling with the upper extremities bilaterally, frequent pushing and/or pulling with the lower extremities bilaterally, frequent balancing, frequent stooping, occasional kneeling, occasional crouching, occasional crawling, occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, frequent reaching bilaterally, frequent handling bilaterally, continuous fingering bilaterally, continuous feeling bilaterally, no more than occasional exposure to extreme heat, avoid all exposure to extreme cold, no more than occasional exposure to pulmonary irritants, avoid all exposure to unprotected heights, avoid all exposure to dangerous machinery, able to perform simple, routine tasks involving no more than simple, short instructions and simple work-related decisions and within frequent and well-explained workplace changes, able to tolerate occasional non-transactional interaction with the public, interaction with supervisors, and able to sustain attention for 2-hour periods with customary breaks. . . .

16

> [A]re there other jobs that exist in significant numbers in the national or regional economy this hypothetical person could perform?

(Id. at 50-51) (emphasis added). As stated, the VE responded that there were jobs that the claimant could perform, namely, the jobs of production assembler, collator operator, and garment sorter. (Id. at 51-52). The ALJ then confirmed with the vocational expert that her testimony was consistent with the DOT and adopted the vocational expert's findings regarding the identified jobs. (Id. at 30, 52-53).

First, the Court notes that the DOT is silent on the issue of a sit/stand option with respect to the jobs identified by the VE. Thus, while there is no question that the ALJ had an affirmative duty to identify any apparent conflicts between the VE's testimony and the DOT and to resolve them, courts have uniformly held that the fact that the DOT does not address a particular requirement or limitation does not suggest the existence of a conflict between the DOT and the VE's testimony; rather, it indicates the absence of a conflict. See e.g., Bennett, 2019 U.S. Dist. LEXIS 16080, *22, 2019 WL 410271, *8 (finding that Plaintiff did not articulate a conflict between the DOT and the vocational expert's testimony where the DOT provided a requirement for reaching in general, but did not include any mention of overhead reaching, and, thus, there was no apparent conflict that the ALJ was required to address); White v. Colvin, 2016 U.S. Dist. LEXIS 174864, *24, 2016 WL 7341709, *8 (M.D.

17

Ala. Dec. 19, 2016) (holding that "[t]he court cannot conclude that the VE's testimony was inconsistent with a portion of the DOT that, by [plaintiff's] own admission, does not even exist," and that "SSR 83-12 does not endeavor to decide that there can never exist significant light jobs with a sit/stand option; rather, it directs an ALJ to obtain VE testimony in such cases."); Gaines v. Colvin, 2015 U.S. Dist. LEXIS 21380, *9, 2015 WL 769926, *4 (M.D. Fla. Feb. 23, 2015) (where the DOT was silent on the limitation of "fine fingering," the court held that, "[t]his is like the situation where law judges include a 'sit/stand' option in a residual functional capacity and a hypothetical question, and the DOT does not recognize such an option. In that circumstance, the expert's testimony is said to be consistent with the DOT. Similarly, there is no inconsistency between the expert's testimony regarding 'fine fingering' . . . and the DOT's information regarding 'fingering.'"); Razor v. Commissioner of Soc. Sec., 2013 U.S. Dist. LEXIS 155563, *14, 2013 WL 5854575, *6 (M.D. Fla. Oct. 30, 2013) (finding that the DOT's silence on a sit/stand option for the jobs identified by the VE did not create a conflict, and that, because the DOT was silent "as to the availability of a sit/stand option for these particular positions," it was "entirely proper for the ALJ to obtain and consider VE testimony in order to supplement the DOT job descriptions."); Feaster v. Astrue, 2011 WL 2036628, 2011 WL 2036628, *8 (M.D. Ala. May 24, 2011) (recognizing that "numerous

18

courts" have held that, "because the DOT does not address the sit/stand option, 'it is not apparent' that a vocational expert's testimony about that subject presents any conflict with the DOT.") (citing cases).

Moreover, as Defendant points out, the Eleventh Circuit has recognized that it is possible to perform light work with a sit/stand option. See, e.g., Herron v. Soc. Sec. Admin., Comm'r, 649 Fed. Appx. 781, 787 (11th Cir. 2016) (substantial evidence supported ALJ's determination that plaintiff retained the RFC to perform light work with a sit/stand option); Timmons v. Commissioner of Soc. Sec., 522 Fed. Appx. 897, 906 (11th Cir. 2013) (finding that plaintiff's physical abilities were consistent with the ability to perform light work with a sit/stand option).

Indeed, Plaintiff has not pointed to any particular requirement(s) of the aforementioned jobs that she ostensibly could not perform with a sit/stand option. Rather, she has simply argued that the sit/stand option is inconsistent with the DOT's definition of "standing," which requires "being on one's feet in an upright position without moving about," which "would not allow for a sit/stand option." (Doc. 9 at 2). However, in addition to the foregoing discussion, Plaintiff's argument overlooks the fact that the RFC provides that Plaintiff has the ability to stand *and/or walk* for six hours, which would allow for moving about. Thus, this argument is misplaced as well.

19

Based on the foregoing, the Court finds that the ALJ properly relied on the vocational expert's testimony that an individual with a sit/stand option is capable of performing the jobs of production assembler, collator operator, and garment sorter. Thus, Plaintiff's claim must fail.

## VII.  Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**DONE** this **27th** day of **February, 2019.**

                                          **/s/ SONJA F. BIVINS**
                                    **UNITED STATES MAGISTRATE JUDGE**